IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

WILLIAM HANBACK,                    )
    Plaintiff,                      )
                                )
                                )   Case No. 1:14-cv-1789
      v.                              )
                                )
DRHI, INC. *et al.*,                )
    Defendants.                     )

## MEMORANDUM OPINION

In this removed, diversity breach-of-contract case, defendants have filed a threshold motion to dismiss raising the following questions:

(1) Whether dismissal of a declaratory judgment claim is warranted where, as here, the declaration sought concerns an alleged breach of contract and damages that have already occurred, and a declaration of rights would not provide guidance to the parties for future conduct under the contract or serve to clarify any ongoing legal relations among the parties;

(2) Whether plaintiff's breach-of-contract claim is time-barred by the applicable Virginia five-year statute of limitations; and

(3) Whether plaintiff's breach-of-contract claim fails to state a claim where, as here, the facts alleged in the Complaint establish that no actionable breach occurred.

### I.

The facts relevant to the pending motion may be succinctly stated.[1]  Plaintiff, William Hanback, is a resident of Virginia.  Defendant DRHI, Inc. ("DRHI") is a Delaware corporation with its principal place of business in Fort Worth, Texas.  Defendant D.R. Horton, Inc. ("D.R.

---

[1] The facts recited here are derived from the Complaint, as required by the principle that in evaluating a motion to dismiss, a "court must accept as true all of the allegations contained in a complaint . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Horton"), DRHI's wholly-owned subsidiary, is also a Delaware corporation with its principal place of business in Fort Worth, Texas.

On July 28, 2000, plaintiff entered into a real estate contract with DRHI to sell his property in the City of Fairfax. The contract called for DRHI to pay plaintiff $560,000.00 for 2.14 acres of residentially-zoned land with the expectation that eight residential lots would be developed. One month later, on August 28, 2000, the contract ("August 28 Contract") was amended to read as follows: "the purchase price shall be $70,000 per approved lot with a minimum of six lots. If only [five] or fewer than [five] lots are approved, the Purchase Price shall be $400,000 for the 2.14 acres." Complaint ¶ 8. On June 5, 2002, after failing to obtain rezoning, DRHI filed suit in Fairfax County Circuit Court seeking specific performance of the August 28 Contract. As a result of this suit, the Fairfax County Circuit Court Judge entered an Order on June 9, 2004, requiring plaintiff to appear at settlement and sign the necessary documents to convey the 2.14 acres to DRHI. Additionally, the June 9 Order construed the contract as requiring DRHI to compensate plaintiff as follows:

> [A]t the time of settlement, DRHI, Inc. shall pay Mr. Hanback $400,000 minus the $10,000 already paid and . . . at the time any subdivision plans are submitted by DRHI, Inc. for the development of property sold by Mr. Hanback [and] are approved by the City of Fairfax, in the event that the plans submitted by DRHI, Inc. permit the construction of six or more individual residences, DRHI, Inc. shall pay to Mr. Hanback $70,000.00 for the sixth lot and $70,000.00 for each additional approved lot thereafter.

Complaint ¶ 11. As directed by the June 9 Order, the parties closed on the property in 2004, with DRHI paying plaintiff $400,000.00 and plaintiff, in return, conveying title to the 2.14-acre parcel to DRHI.

Thereafter, at some point between 2004 and 2007, DRHI conveyed the 2.14 acres purchased from plaintiff to D.R. Horton, DRHI's wholly-owned subsidiary and home building

entity. In the spring of 2007, D.R. Horton submitted a combined redevelopment plan to the Fairfax City Council in which the 2.14 acres purchased from plaintiff were combined with an adjoining 1.9-acre parcel, which D.R. Horton had more recently purchased from another entity. The redevelopment plan for the combined parcels sought to create a community of 15 homes which would access the City's street network via Ridge Avenue, an existing street. On May 22, 2007, the City Council approved the redevelopment plan and authorized the construction of 15 new single-family homes on the combined parcels. The approval was contingent on the following proffers by D.R. Horton: (1) dedication of an acre to the City to create a natural buffer zone with the adjoining community; and (2) acquisition of additional land from the City in order to (i) widen Ridge Avenue for vehicular traffic, (ii) construct utility easements, and (iii) build a stone retaining wall. D.R. Horton satisfied these conditions by using the 2.14 acres DRHI purchased from plaintiff, which supplied all of the land for the buffer zone and enabled, as the Complaint puts it, the "swap" of the City property and rights-of-way. Complaint ¶ 19. The Complaint alleges that without the 2.14 acres purchased from plaintiff, the roadway could not have been expanded and the combined property could not have accommodated 15 units. In the end, as the Supreme Court of Virginia noted, "[u]nder the [2007] plan, [plaintiff's] former property contained 5.5 lots and a one acre 'buffer zone,' and the adjoining parcel contained 9.5 lots." *DRHI, Inc. v. Hanback*, 765 S.E.2d 9, 10 (Va. 2014).

Shortly thereafter, the real estate market collapsed in Northern Virginia, and as a result, there was essentially no construction for the next two-and-a-half years. In late 2009, DRHI filed subdivision plans with the Fairfax City Council for the combined 2.14 and 1.9-acre parcels. This plan included the buffer zone and easements for the community and was approved by the City on January 8, 2010. This approved plan used the 2.14 acres DRHI purchased from plaintiff for the

buffer zone and the remainder of the 2.14-acre parcel constituted five-and-a-half of the 15 subdivided lots. The Complaint alleges that D.R. Horton obtained the right to build five additional houses by combining the 2.14-acre and 1.9-acre parcels to obtain what plaintiff labels the "bonus density." Complaint ¶ 23. The City approved the final plans for grading in 2011, and home construction began shortly thereafter.

Plaintiff then contacted defendants in May 2012 requesting payments under both the August 28 Contract and the June 9, 2004 Order. Defendants did not respond to this request and plaintiff then filed a petition to show cause in Fairfax County Circuit Court seeking to hold defendants in contempt for violation of the June 9 Order. On June 16, 2013, the Fairfax County Circuit Court issued a written opinion letter finding that defendants owed plaintiff $350,000.00 under the June 9, 2004 Order and directed defendants to pay the funds forthwith. When defendants did not comply, the Fairfax County Circuit Court held defendants in contempt and on September 20, 2013 entered judgment against defendants in the amount of $350,000.00.

Thereafter, DRHI filed a notice of appeal in both the Court of Appeals of Virginia and the Supreme Court of Virginia. *See Hanback*, 765 S.E.2d at 11. In order to confer jurisdiction over the matter, the Supreme Court of Virginia certified the appeal from the Court of Appeals of Virginia. *Id.* at 12. The Supreme Court of Virginia then reversed and vacated the Circuit Court's entry of judgment, finding that the

> June 9, 2004 [O]rder was not an enforceable judgment in favor of [plaintiff], and no finite amount of damages was identified. The additional amount DRHI might owe to [plaintiff] was left open and was dependent on numerous factors which had not occurred as of June 9, 2004.

*Id.* at 13. The Supreme Court of Virginia also noted that the

> June 9, 2004 [O]rder left unresolved any issues surrounding DRHI's future failure to pay and any consequent damages. Because the June 9, 2004 [O]rder did not contain definite terms as to the total amount DRHI was required to pay and when

4

> such payment was due, DRHI could not be held in contempt for failing [to]
> comply with the June 9, 2004 [O]rder.

*Id.* Accordingly, the Supreme Court of Virginia "reversed and vacated" the judgment of the

Circuit Court holding DRHI in contempt.[2]  Plaintiff then proceeded to file the instant Complaint

in Fairfax County Circuit Court on December 1, 2014.  Thereafter, defendants filed a timely

notice of removal and a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P.  The matter

was fully briefed and argued and is now ripe for disposition.

## II.

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief, in order to

give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A district court should dismiss a

complaint if, accepting all well-pleaded allegations in the complaint as true and drawing all

reasonable factual inferences in the plaintiff's favor, the complaint does not allege "enough facts

to state a claim to relief that is plausible on its face." *Id.* at 570.  The factual allegations cannot

be mere speculation, and must be more than "a sheer possibility that a defendant has acted

unlawfully." *Iqbal*, 556 U.S. at 678.  Thus, a formulaic recitation of the elements of a cause of

action will not survive a motion to dismiss, nor will unadorned conclusory allegations. *See*

*Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 679.  The facts in a complaint must be sufficient to

"nudge claims across the line from conceivable to plausible." *In re Capital One Derivative*

*Shareholder Litig.*, 952 F. Supp. 2d 770, 781 (E.D. Va. 2013) (citing *Nemet Chevrolet, Ltd. v.*

*Consumeraffairs.com, Inc.*, 591 F.3d 250, 255-56 (4th Cir. 2009)).  It follows that the absence of

---

[2] *DRHI Inc. v. Hanback*, Record No. 140605 (Va. Nov. 20, 2014) (Defendants' Final Brief in
Support of Their Motion to Dismiss, Ex. A).

"any one of the[] elements" of a cause of action warrants dismissal under Rule 12. *Self v. Norfolk Southern Corp.*, 264 F. App'x 313, 314 (4th Cir. 2008). And importantly, "dismissal . . . is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense" such as the expiration of the applicable statute of limitations. *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996).

Defendants contend first, that plaintiff's claims are time-barred by the applicable statute of limitations and second, that neither plaintiff's declaratory judgment claim nor plaintiff's breach-of-contract claim properly states a claim upon which relief can be granted. Each contention is separately addressed.

### III.

### A.

As a threshold matter, a "state court declaratory action that is removed" is treated as "invoking the Federal Declaratory Judgment Act, 28 U.S.C. § 2201." *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013); *see also Jones v. Sears Roebuck & Co.*, 301 F. App'x 276, 281 n. 12 (4th Cir. 2012) ("Although the State Complaint purported to invoke West Virginia's Declaratory Judgment Act, we apply the federal Declaratory Judgment Act in this proceeding."). It is well-settled that under "the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Courts in this circuit have held that declaratory judgment actions fall into the procedural category because both "the federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Virginia Code § 8.01-184 are procedural; they do not create or change any substantive rights." *Chapman v. Clarendon Nat. Ins. Co.*, 299 F. Supp. 2d 559, 562 (E.D. Va. 2004). As a result, "once removed, an action originally filed under Virginia

Code § 8.01-184 is treated by the federal court as though it had been filed under 28 U.S.C. § 2201." *Id.* at 563.

Section 2201 provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). As courts have uniformly recognized, "[t]his power has consistently been considered discretionary." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996). The Fourth Circuit has provided guidance on the exercise of this discretionary power, commenting that a declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* It follows that a declaratory judgment is "unavailable in situations where . . . claims and rights asserted have fully matured, and the alleged wrongs have already been suffered." *Trull v. Smolka*, No. 3:08cv460, 2008 WL 4279599 at *8 (E.D. Va. Sept. 18, 2008). In other words, when a breach of contract has already occurred and damages have already accrued, "there is no guidance" that can be offered via a declaratory judgment to steer "conduct away from a breach of contract." *The Hipage Co., Inc. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 615 (E.D. Va. 2008). Similarly, when damages arising from a business transaction have "already accrued," a declaratory judgment action is inappropriate. *Id.*; *see also Tapia v. U.S. Bank, N.A.*, 718 F. Supp. 2d 689, 695 (E.D. Va. 2010) (Noting that declaratory judgments are inappropriate "if the questionable conduct has already occurred or damages have already accrued").

These settled principles, applied here, point convincingly to the conclusion that plaintiff's declaratory judgment claim must be dismissed. According to the Complaint, the breach of

contract occurred when the City approved the site plans on January 8, 2010,[3] and the approval "vested [plaintiff's] right to that subsequent payment contemplated by the contract and referenced in the 2004 Decree." Complaint ¶ 22. Thus, as the Complaint plainly reflects, the alleged breach of contract and damages in this case have already occurred. It follows that a declaratory judgment is inappropriate and unwarranted in this case because such a declaration would not clarify uncertain legal relations between the parties in an ongoing relationship, nor would it provide the parties with any guidance for future conduct pursuant to the August 28 Contract. Accordingly, plaintiff's declaratory judgment claim is appropriately dismissed.

### B.

Next, defendants contend first, that plaintiff's breach-of-contract claim is barred by the applicable statute of limitations and second, that plaintiff's breach-of-contract claim must be dismissed on the merits. Both arguments are separately addressed.

### 1. Statute of Limitations

It is well-settled that under Virginia law, an "action for breach of a written contract must be filed within five years after the cause of action accrues." *Arrington v. Peoples Sec. Life Ins. Co.*, 458 S.E.2d 289, 291 (Va. 1995); *see also* Va. Code § 8.01-246(2). And a "cause of action for breach of contract accrues and the limitation period commences to run from the date of the alleged breach." *Arrington*, 458 S.E.2d at 291. Thus, the first task in the statute of limitations analysis is to determine when the alleged breach occurred, as the limitations period begins to run from that date. According to the Complaint, the City Council approved a redevelopment plan on May 22, 2007, and the approval of this plan was contingent on using the 2.14 acres DRHI

---

[3] Importantly, this is only plaintiff's assertion as to when the alleged breach of contract occurred, but this assertion is not accepted for purposes of analyzing whether plaintiff's breach-of-contract claim is barred by the applicable statute of limitations. *See infra* Part III.B.1.

purchased from plaintiff to build additional lots.  Thus, accepting plaintiff's allegation that he was entitled to a second payment under the August 28 Contract when more than five lots were approved for the combined parcels, defendants' payment obligation was clearly triggered in 2007 when the City Council approved the redevelopment plan, allowing defendants to build 15 homes on the combined parcels.  Given this and given that plaintiff filed the Complaint in state court on December 1, 2014, it is clear that more than five years elapsed between the City's approval of the redevelopment plan and plaintiff's filing of the Complaint.  Therefore, defendants are correct that plaintiff's cause of action based on breach of the August 28 Contract is barred by the five-year statute of limitations.

Seeking to avoid this result, plaintiff contends that the statute of limitations was triggered only in 2010 when defendants' *subdivision plans* were approved by the City.  This argument fails; plaintiff's breach-of-contract claim is premised on the notion that defendants used the 2.14 acres purchased from plaintiff combined with the additional adjoining 1.9 acres to build additional lots on the combined property, and by May 22, 2007, it was clear that the City had approved the building of these additional lots.  Even if plaintiff's argument concerning entitlement to payment for additional lots under the August 28 Contract is accepted, that entitlement was triggered on May 22, 2007, and the statute of limitations began to run from that date and expired before this action was filed in state court.

Plaintiff argues that the statute of limitations did not begin to run until 2010 because *subdivision plans* were not approved by the City until 2010 and the June 9, 2004 Order specifically stated that payment to plaintiff for additional lots would be triggered by defendants' submission of subdivision plans.  This argument has at least two fatal flaws.  First, plaintiff conveniently overlooks the fact that the August 28 Contract—the basis for plaintiff's breach-of-

9

contract claim—makes no mention of the approval of *subdivision plans* as the trigger or basis entitling plaintiff to payment for additional lots built on the combined property. Instead, the August 28 Contract refers only to "lots [which] are approved."[4] And it is clear that the City approved additional lots for building in 2007. Again, the critical fact for the statute of limitations analysis is that on May 22, 2007, when the City authorized the construction of 15 new single-family homes on the combined parcels, plaintiff was aware that defendants had obtained rezoning to build 15 residential lot units—which plaintiff alleges is five lots more than defendants, by-right, could build on the combined parcels.

The second fatal flaw in plaintiff's argument is plaintiff's heavy reliance on the June 9, 2004 state court Order. This Order also makes the mistake of relying on submission of *subdivision plans*—a term which is not mentioned in the August 28 Contract—as entitling plaintiff to payment for the building of additional lots. Moreover, plaintiff's reliance on the June 9, 2004 Order is misplaced given the Supreme Court of Virginia's ruling in reversing and vacating the judgment holding defendants in contempt for nonpayment under the June 9, 2004 Order. *See Hanback*, 765 S.E.2d at 13. Thus, even assuming *arguendo* plaintiff's breach-of-contract theory is valid—which it is not, *see infra* Part III.B.2—defendants' obligation to pay plaintiff under the contract was clearly triggered in 2007. Moreover, it is important to note that plaintiff's argument, if adopted, would lead to the anomalous result that if the City had waited many years after the 2007 approval of the redevelopment plan allowing 15 homes on the combined parcels to approve new subdivision plans allowing the building of more than 15 lots, plaintiff's breach of contract claim, according to plaintiff, would still be timely.[5] Such a result is

---

[4] August 28 Contract ¶ 1.

clearly contrary to Virginia law mandating that the five-year statute of limitations applicable to breach-of-contract claims begins to run once a breach occurs.

## 2. Failure to State a Claim Upon Which Relief can be Granted

Quite apart from the statute of limitations bar, defendants are also correct that plaintiff's breach-of-contract theory fails to state a claim upon which relief can be granted. Under Virginia law, the elements of a breach of contract action are: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach or obligation. *See Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004).

The Complaint's allegations make clear that no breach occurred. The August 28 Contract provides as follows: "the purchase price shall be $70,000 per approved lot with a minimum of six lots. **If only [five] or fewer than [five] lots are approved, the Purchase Price shall be $400,000 for the 2.14 acres.**" Complaint ¶ 8 (emphasis added). In other words, by the plain terms of the August 28 Contract, the purchase price was *either* $70,000 per approved lot *if* six or more lots were approved *or* $400,000 if only five or fewer than five lots were approved. The Complaint alleges that only five-and-a-half lots were placed on the 2.14-acre parcel plaintiff sold to DRHI. *See* Complaint ¶ 23. As such, based on the plain terms of the August 28 Contract, it is apparent that the parties only contemplated different purchase prices depending on how many *whole* lots were approved—not fractional lots—and the $70,000 per approved lot was contingent upon the condition that never occurred, namely, approval of six or more lots on the 2.14 acres

---

[5] Plaintiff essentially endorsed this position at oral argument, contending that even if the plans were not given final site approval for 50 years, plaintiff's breach-of-contract claim would still be timely. *See Hanback v. DRHI Inc. et al.*, No. 1:14-cv-1789 (E.D. Va. Feb. 20, 2015) (Doc. 15) (Transcript of February 20, 2015 Motions Hearing) at 29-30.

plaintiff sold to DRHI.  At most, five-and-a-half lots were placed on the 2.14-acre parcel and for this number of lots, plaintiff was entitled only to the $400,000 he has already received.  The August 28 Contract entitled plaintiff to $70,000 "per approved lot *with a minimum of six lots*."[6] Thus, it is clear that the August 28 Contract entitled plaintiff to $70,000 per approved lot if six *whole* lots were approved.  Under the terms of the August 28 Contract, then, approval of five-and-a-half lots is treated as the approval of only five whole lots, which required defendants to pay plaintiff the $400,000.00 plaintiff has already received.

Nor is there any merit to plaintiff's argument that the August 28 Contract contemplates payment for what plaintiff labels as the "bonus density."  Defendants are correct that the plain terms of the August 28 Contract only address the 2.14-acre parcel, and there is no contract provision addressing any so-called "bonus density."  Moreover, nowhere in the August 28 Contract is there a provision requiring that defendants compensate plaintiff based on lots built on subsequently-acquired *adjacent* property.  To the contrary, Virginia law is clear that where, as here, "contract terms are clear and unambiguous, a court must accord those terms their plain meaning." *Quadros & Assoc's, P.C. v. City of Hampton*, 597 S.E.2d 90, 93 (Va. 2004).  In sum, the clear and unambiguous terms of the August 28 Contract entitle plaintiff only to the $400,000.00 he has already received.

Plaintiff again seeks to save his breach-of-contract claim by reference to the June 9, 2004 Order entered by the Fairfax County Circuit Court.  This reliance on the June 9, 2004 Order is misplaced as that Order was vacated and reversed by the Supreme Court of Virginia. *See Hanback*, 765 S.E.2d at 13.  Moreover, as the Supreme Court of Virginia noted, this "June 9, 2004 [O]rder was not an enforceable judgment" because the "additional amount DRHI might

---

[6] August 28 Contract ¶ 1 (emphasis added).

owe to [plaintiff] was left open and was dependent on numerous factors which had not occurred as of June 9, 2004." *Hanback*, 765 S.E.2d at 13. Thus, the Supreme Court of Virginia held that the June 9, 2004 Order did not contain definite terms and was fatally indefinite.

In sum, plaintiff's breach-of-contract claim is barred by the statute of limitations and also fails to state a claim upon which relief can be granted.[7] And plaintiff's request for leave to amend the Complaint must be rejected, as plaintiff has forecasted no facts that might save his claims nor do any such facts appear in the record or the briefs. Thus, allowing plaintiff leave to amend the Complaint would be futile.[8] *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) ("[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules.") (internal quotation marks and citations omitted).

## IV.

In sum, defendants' motion to dismiss must be granted with respect to both of plaintiff's causes of action, and plaintiff's Complaint must be dismissed in its entirety.

An appropriate Order will issue.

Alexandria, VA
March 11, 2015

/s/

T. S. Ellis, III
United States District Judge

---

[7] Given the result reached here with respect to plaintiff's breach-of-contract and declaratory judgment claims, it is unnecessary to reach or decide defendants' further arguments that plaintiff's claims must be dismissed on *res judicata* grounds.

[8] Indeed, it appears that this is plaintiff's fourth unsuccessful attempt to collect additional payments from defendants under the August 28 Contract, which reinforces the result reached here in not allowing plaintiff leave to amend the Complaint.